UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLY KOGLER,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE FARM GENERAL INSURANCE COMPANY,<br><br>    Defendant. | Case No. 16-cv-00534-JD<br><br>**ORDER RE SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 20, 21 |

Plaintiff Carly Kogler, as the assignee of Daniel Frank and his parents, sued defendant State Farm General Insurance Company for insurance coverage of the serious injuries she sustained when Frank attacked her while he was drunk and high on LSD. Frank was an "insured" under a Homeowners Policy and a Personal Liability Umbrella Policy issued by State Farm, but the company disputes coverage. The parties have filed cross-motions for summary judgment. Dkt. Nos. 20, 21.

Frank's violent assault on Kogler occurred during the "Bay to Breakers" event in San Francisco on May 20, 2012. Kogler alleges that Frank consumed LSD and alcohol in an amount that caused him to "black out," in which state he attacked Kogler at the race event. *See* Dkt. No. 1-1. Kogler sued Frank in San Francisco Superior Court for negligence, negligent infliction of emotional distress, false imprisonment, and violation of Health and Safety Code Section 11700. *Kogler v. Frank*, Case No. CGC-13-531536. That case ended in a $5 million judgment against Frank and an agreement to assign his coverage claims to Kogler. Dkt. No. 1-1.

State Farm declined to provide coverage or a defense in the state court action. This case addresses the propriety of State Farm's decisions. Standing in the shoes of Frank as his assignee, Kogler asserts seven claims against State Farm: breach of the implied covenant of good faith and

fair dealing (under the Homeowners Policy and the Personal Liability Umbrella Policy); breach of contract (again for both policies); and under California Insurance Code Section 11580. Dkt. No. 1-1. The summary judgment motions involve all of these claims.

**DISCUSSION**

**I.   "ACCIDENT" COVERAGE UNDER THE HOMEOWNERS AND UMBRELLA POLICIES**

Coverage under the Homeowners Policy is triggered by an "occurrence," which in turn requires an "accident." Dkt. No. 20-2 ¶ 1; Dkt. No. 20-3, Ex. 1 at 16, 2. The Umbrella Policy also requires an "accident" in some circumstances. That policy promises to pay on behalf of the insured "damages because of a loss" that exceed the retained limit, as well as to "provide a defense" if a "suit is brought against any insured for damages because of a loss . . . ." Dkt. No. 20-2 ¶ 2; Dkt. No. 20-3, Ex. 2 at 6. "Loss" is defined in two disjunctive ways, and the first definition requires "an accident." Dkt. No. 20-3, Ex. 2 at 2 (¶ 7(a)).

Kogler has failed to meet her burden of establishing a potential of coverage under these provisions. That is so because what happened here was not an "accident." In *Delgado v. Interinsurance Exchange of the Automobile Club of Southern California*, 47 Cal. 4th 302, 311-12 (2009), the California Supreme Court held that an "injury-producing event is not an 'accident' within the policy's coverage language when all of the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor." As the court underscored, the insured's "assault and battery . . . were acts done with the intent to cause injury; there is no allegation in the complaint that the acts themselves were merely shielding or the result of a reflex action. Therefore, the injuries were not as a matter of law accidental, and consequently there is no potential for coverage under the policy." *Id*. at 312.

The same analysis and conclusion apply here. In the underlying state court complaint, Kogler alleged that Frank grabbed her "by the hair and deprived her the freedom to [*sic*] moving away and/or escaping." Dkt. No. 20-3, Ex. 4 ¶ 7. Frank "lifted plaintiff up off the ground by her hair and began pulling plaintiff through the grass towards a grove of trees. Plaintiff immediately felt immense pain and attempted to remove Frank's grasp of her hair, but was unable to do so."

1    *Id.* Plaintiff alleged that as a result of this encounter, she suffered the "immediate loss of 20 large chunks of hair, permanent loss of hair, and severe emotional distress." *Id.* ¶ 13.

That is the gravamen of plaintiff's complaint against Frank, and those facts are not disputed. For purposes of summary judgment, the parties have stipulated that Daniel Frank "grabbed plaintiff Carly Kogler by the hair and deprived her the freedom of moving away and/or escaping, which plaintiff Carly Kogler did not consent to. Daniel then pulled plaintiff's hair from behind with sufficient force to lift her from the ground and began dragging her, which caused him to rip out chunks of her hair. . . . Plaintiff suffered physical and emotional injuries as a result of the attack." Dkt. No. 20-2 ¶ 4. Nor does plaintiff dispute that these were the very same facts known by State Farm at the time defense of the suit was tendered and refused. *See* Dkt. No. 22 at 4 (at the time it declined coverage, State Farm was aware that Frank "grabbed and pulled plaintiff by the hair without her consent and deprived her the freedom of moving away and/or escaping, which plaintiff did not consent to.").

Under *Delgado*, these facts taken together establish that plaintiff's injuries "were not as a matter of law accidental, and consequently there is no potential for coverage under the policy" provisions here which require an "accident." 47 Cal. 4th at 312.

## II. "PERSONAL INJURY" COVERAGE UNDER THE UMBRELLA POLICY

One relevant portion of the Umbrella Policy does not require an "accident." The second definition of "loss" under the Umbrella Policy makes no mention of an "accident," and instead refers only to "the commission of an offense which first results in personal injury during the policy period." Dkt. No. 20-2 ¶ 2; Dkt. No. 20-3, Ex. 2 at 2. The definition of "personal injury" includes "injury other than bodily injury arising out of . . . false imprisonment." *Id.* Here, plaintiff's underlying complaint alleged false imprisonment against Frank, Dkt. No. 20-3, Ex. 4 ¶¶ 29-31, and he also pled guilty to a criminal misdemeanor charge of false imprisonment as against Kogler. Dkt. No. 20-5, Exs. 12-14.[1] So for this portion of the Umbrella Policy, Kogler

---

[1] The pending requests for judicial notice, Dkt. Nos. 20-4 & 23-1, are granted, and the evidentiary objections, Dkt. Nos. 23-5 & 25-1, are overruled. The Court also grants plaintiff's motion for leave to supplement the record, Dkt. No. 36, but finds that the newly proffered evidence does not change the outcome here.

has met her burden of establishing a potential for coverage, and the burden consequently shifts to the insurer to negate that possibility of coverage.

To meet that burden, State Farm relies on both the exclusionary language in the policy itself as well as the statutory exclusion in California Insurance Code Section 533 that is implied into every insurance contract. Plaintiff herself acknowledges that the exclusion for "willful acts" in Insurance Code Section 533 likely applies and precludes indemnification for the alleged false imprisonment at issue here. Dkt. No. 22 at 1. That conclusion has some support. *See State Farm Gen. Ins. Co. v. Mintarsih*, 175 Cal. App. 4th 274 (2009). Even so, that would foreclose State Farm's duty to indemnify, but not its duty to defend. As in *Downey Venture v. LMI Insurance Company*, 66 Cal. App. 4th 478 (1998), the insurance policy here expressly promises not just a duty to indemnify but also to defend, and the statutory language in Insurance Code Section 533 precludes the former but not the latter. *See* Dkt. No. 20-3, Ex. 2 at 6; *Downey Venture*, 66 Cal. App. 4th at 486-87 & n.3.

To eliminate not just its duty to indemnify but also its duty to defend, State Farm has only one path: it must conclusively establish that the exclusionary language in the Umbrella Policy is satisfied here. The relevant language in the policy provides that there is no coverage for personal injury "when the insured acts with specific intent to cause any harm." Dkt. No. 20-3, Ex. 2 at 9.

State Farm has met its burden of proving the applicability of this exclusion. Three key cases show why. *Gonzalez v. Fire Insurance Exchange*, 234 Cal. App. 4th 1220 (2015), illustrates by way of contrast why the exclusion is met here. The exclusion in that case was very similar to this one in foreclosing coverage for damages that are "either expected or intended from the standpoint of an insured." *Id*. at 1239. The court stated that "the appropriate test for 'expected' damage is whether the insured knew or believed its conduct was substantially certain or highly likely to result in that kind of damage." *Id*. That is a test that would also fit the exclusionary language here which asks whether the insured acted "with specific intent to cause any harm." In *Gonzalez*, the court held that the insurer had not met its burden on the exclusion because the insured "denied any wrongdoing at the time of tender and because [the insurer] has not submitted any evidence to the contrary." *Id*. Moreover, "[b]ased on the complaint, Rebagliati [the insured]

4

could have been found liable for damages incurred by Gonzalez due to his negligence in creating the conditions that led to her false imprisonment in the room." *Id*. at 1239-40. The complaint in that case "raised the possibility that the other individuals named in the complaint were the ones who perpetrated the sexual assault against Gonzalez." *Id*. at 1240.

None of those circumstances existed here. There is no allegation or suggestion that anyone other than Frank dragged plaintiff by the hair and caused her injuries. There is no possibility raised in the complaint that Frank might be found liable for creating the conditions that led to plaintiff's false imprisonment; rather, the allegation is that he falsely imprisoned her by dragging her by the hair without her consent. Dkt. No. 20-3, Ex. 4 ¶ 7. And it is stipulated for summary judgment purposes that Frank did indeed grab plaintiff "by the hair and deprived her the freedom of moving away and/or escaping," Dkt. No. 20-2 ¶ 4, and undisputed that these were the state of facts known to State Farm at the time of tender and denial of the defense of the underlying action. Dkt. No. 22 at 4. *Gonzalez* consequently supports the conclusion that State Farm has met its burden on the exclusion here.[2]

*Delgado*, 47 Cal. 4th 302, also shows that the false imprisonment alleged here is properly treated as an act with a specific intent to cause harm. There, where "insured Reid hit and kicked 17-year-old Jonathan Delgado," the court concluded that these acts were "done with the intent to cause injury; there is no allegation in the complaint that the acts themselves were merely shielding or the result of a reflex action." *Id*. at 306, 312. Here, too, there is no allegation that Frank's grabbing and pulling of plaintiff by the hair -- so hard that he lifted her off the ground -- was "merely shielding or the result of a reflex action." The Court concludes that Frank's acts were "done with the intent to cause injury," 47 Cal. 4th at 312, which satisfies the exclusionary clause here.

*Fire Insurance Exchange v. Altieri*, 235 Cal. App. 3d 1352 (1991), leads to the same result. Although the court there was focused on the uninsurable willful acts exclusion under Insurance

---

[2] The contrast between the facts of *Gonzalez* and those here also shows why this reading of the exclusionary provision does not render the insurance policy illusory. If the facts here had been closer to *Gonzalez*, there would have been a possibility of coverage for a false imprisonment claim notwithstanding the existence of this exclusionary clause, as was the case in *Gonzalez*.

Code Section 533, its conclusion that assaultive conduct without any legal justification was "inherently harmful and wrongful" is pertinent here. *Id*. at 1359-60. In reaching that finding, *Altieri* held that whether "he subjectively intended not to 'hurt Greg bad' [was] not relevant" to a finding of "willfulness" under Section 533. *Id*. Kogler does not point to any good reasons why the same approach should not apply here. Viewed objectively, Frank's conduct supports a finding as a matter of law that he acted with the specific intent to harm Kogler when he lifted her off the ground by her hair.

Plaintiff strenuously argues that Frank's voluntary intoxication makes a critical difference because it allegedly negated his ability to form a specific intent to cause harm. California does not appear to have directly resolved this question, and other states are divided on the answer. In *Hanover Insurance Company v. Talhouni*, 413 Mass. 781 (1992), for example, the Massachusetts Supreme Judicial Court concluded that voluntary intoxication is relevant to the determination of intent to cause injury in an exclusion clause. *Id*. at 786-87. The court characterized this as the "majority rule," albeit on the rather thin basis of only seven other jurisdictions, and found that the insurer had not carried its burden of proving the exclusion in the face of evidence that the insured "was completely out of touch with reality, was hallucinating and delusional, and did not know that he was assaulting another human being." *Id.* at 786-87. In reaching this outcome, the court gave considerable weight to the "public interest that the victim be compensated." *Id*. at 786 (internal citation omitted). As *Hanover* notes, several other states have reached the opposite result and determined that an insured cannot reasonably expect an assault to be covered while voluntarily intoxicated or impaired. *Id*.; *see also*, *e.g.*, *Am. Family Mut. Ins. Co. v. Peterson*, 405 N.W.2d 418 (Minn. 1987).

Because this issue is an open question under California law, principles of federalism counsel that the Court tread lightly. Without deciding, then, what California law should be, the Court finds that *Hanover* is not consonant with California law as it currently stands. This is so because, as our circuit has determined, California follows the principle that if an insured can form an intent to act, the intent to harm is irrebuttably presumed and evidence of a mental state is irrelevant. *Morton by Morton v. Safeco Ins. Co.*, 905 F.2d 1208, 1210-12 (9th Cir. 1990). In that

sense, other state decisions like *Wessinger v. Fire Insurance Exchange*, 949 S.W.2d 834 (Tex. App. 1997), are more consistent with the way California approaches questions of assaultive conduct and intent. While the Court shares the *Hanover* court's concern for victims and the desire to promote the "public interest that the victim be compensated," 413 Mass. at 786, this cannot trump the policy language itself and the law in this jurisdiction. The Court is also mindful of the countervailing public policy that the decision to voluntarily intoxicate oneself -- with illegal drugs, no less -- should not be abetted or rewarded by the comfort that one's ensuing savagery will be paid for by the insurance company. In addition, allowing voluntary intoxication to void an agreed-upon exclusion for intentional harm would unduly disrupt settled contract expectations.

## CONCLUSION

There was no "accident" and State Farm has established the applicability of the exclusionary clause in the Umbrella Policy here, and consequently it has no duty to indemnify or defend Frank for the underlying action. State Farm's motion for summary judgment, Dkt. No. 20, is granted. Plaintiff's cross-motion, Dkt. No. 21, is denied.

What remains in the case is not entirely clear. Plaintiff disputes the propriety of granting summary judgment on "non-coverage issues" at this point of the litigation, Dkt. No. 22 at 20-21, and State Farm also appears to believe that some portion of this case may be left even if it had no insurance coverage duties as a matter of law. Dkt. No. 25 at 15.

The Court consequently directs the parties to file a joint statement addressing this issue by **January 19, 2018**. If the parties are in agreement that this order resolves the entire case, the Court will enter judgment in favor of State Farm and close the case. If the parties believe some part of the action may still be left, they are to suggest a case management plan for addressing and resolving those remaining claims by motion practice or otherwise. The parties may also propose dates for a further case management conference.

**IT IS SO ORDERED.**

Dated: January 2, 2018

JAMES DONATO
United States District Judge

7